MAREAN (HINKLEY v.). See Case No. 6,-523.

———

## Case No. 9,064.

### MAREAN v. UNITED STATES INS. CO.

[3 Wash. C. C. 256.] [1]

Circuit Court, D. Pennsylvania. April Term, 1814.[2]

INSURANCE—MARINE—AGAINST TOTAL LOSS—PARTIAL LOSS—SALVAGE EXPENSES—ABANDONMENT.

1. Insurance on goods on board the brig Betsey, from Cape Henry to Lisbon. The cargo consisted of corn, corn meal, and navy-bread; and the policy contained the usual memorandum, in which it was stated, that upon certain articles, and among them those insured, the insurer agreed to pay for a total loss only. The brig Betsey was driven on shore, within one or two miles of Lisbon; and the cargo was so injured, that when the part which was taken to Lisbon, was sold, it did not pay the expenses of saving it; and the insured claimed, in this action, for a total loss.

2. As to memorandum articles, the insurer agrees to pay for a total loss only; and if the property arrive at the port of delivery, reduced in quantity, or in value, to any amount, the loss cannot be said to be total; and the insured cannot treat it as a total loss, or demand indemnity for a partial loss.

3. There is no instance where the insured can demand, as for a total loss, that he might not have declined making an abandonment, and demanded a partial loss. If the property insured, be included within the memorandum in the policy, the insured cannot, under any circumstance, call upon the insurer for a partial loss; and consequently he cannot elect to turn it into a total loss.

[Cited in brief in Delaware Ins. Co. v. Winter, 38 Pa. St. 184.]

Action on a policy, dated 14th December, 1812, on goods on board the brig Betsey, at and from Cape Henry to Lisbon, at a premium of 6 per cent. valued at five thousand dollars, the sum underwritten; declared to be against all risks, except British captures; warranted neutral. The jury found a verdict for the plaintiff, subject to the opinion of the court, on the following facts agreed by the counsel: The cargo consisted of 4406 bushels of Indian corn, 100 barrels of navy-bread, and 20 barrels of corn meal. The brig sailed from Baltimore on the 11th, and from Cape Henry on the 13th of November; she experienced on the voyage many severe gales of wind. On the 18th of December, she passed the rock of Lisbon, and came to anchor about four miles below Belem castle. She leaked considerably, in consequence of the injury she had sustained, from the violent gales to which she had been exposed. After

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]
2 [Affirmed in 1 Wheat. (14 U. S.) 219.]

passing the rock, the wind died away, and the current being adverse, she came to anchor. The captain and supracargo landed; went through the customary forms at Belem, to obtain a permit to pass the castle, and then proceeded to Lisbon. The health-boat visited the brig, and ordered her to get above the castle as soon as possible. On the 19th, she was again exposed to a heavy and fatal gale, which drove her ashore, just below Belem castle, the sea breaking entirely over her. The supracargo considered both vessel and cargo as totally lost; but by directions of the custom-house, as much of the cargo as could be got out, was unladen, by a number of French prisoners, who were employed for that purpose. The cargo was all wet, and the part of it which was taken out was carried to the castle, where it was dried. From thence it was carried to Lisbon, in lighters, and was sold in the corn market, by the consignee of the cargo, at about one-fourth of the price of sound corn. The quantity thus saved and sold, amounted to 1988 bushels. The supracargo petitioned for liberty to sell, at the place where the corn was first deposited, which could not be granted; and he was obliged to submit to the custom of the place, and allow it to be sold at the corn market. The brig was so completely wrecked, that she was sold, with her materials, in lots, where she lay. Had the supracargo been left to the free exercise of his own judgment, he would not have attempted to save any part of the cargo, in consequence of the total damage, and the great expense of saving it. The nett proceeds of the cargo, after paying the expenses of unlading, drying, and selling it, exceeded very little the expenses of the supracargo, in attending to the business. The port of Lisbon commences above Belem castle, and the custom of the place is to discharge cargoes of corn, between that castle and Cantara; which latter place, is from one to two miles below Lisbon. The vessel never arrived at her port of discharge. She was entered, on the 23d of December, at the custom-house, by the American consul; which, he said, was a necessary measure; but port duties do not attach to vessels, till they pass the castle. Still, as part of the cargo was carried to Lisbon, the entry was made by the consul, and the dues were paid. On the 11th of March, the plaintiff having received notice of the shipwreck, offered to abandon, which was refused.

Chauncey and Sergeant, for plaintiff, contended, that the loss as to the cargo amounted to a total loss; and if not so, then (2) the voyage was lost, the vessel having been wrecked before she reached her port. That although a part of the cargo was saved, it was done by the orders of the government, not of the agents of the insured; and was not restored to them with full power to do with it what they pleased. That a right to abandon once existed; and it continues, unless

before the offer is made, it is restored to the owner, in a condition to prosecute the voyage, clear of the effects of the peril—none of which circumstances concur in this case. Cases cited, 1 Marsh. Ins. 222; Wilson v. Smith, 3 Burrows, 1553; 1 Marsh. Ins. 226; 2 Strange, 1065; 1 Marsh. Ins. 227, 229, 233, 588; Burnett v. Kensington, 7 Term R. 210; Dyson v. Rowcroft, 3 Bos. & P. 474; Leroy v. Governeur, 1 Johns. Cas. 226; Neilson v. Columbia Ins. Co., 3 Caines, 108; Maggrath v. Church, 1 Caines, 212; 2 Caines, 324; Manning v. Newnham [3 Doug. 130] 2 Marsh. Ins. 586; Goss v. Withers [2 Burrows, 683] Park. Shipp. 582, 486, 585, 587, 566.

Binney and Rawle, for defendants, insisted, that there can be no partial loss on memorandum articles, if they arrive at the port of delivery, either for deterioration, inequality, or reduction in quantity; and that it is the duty of the insured, to send on the cargo, however injured, if he has the means to do so; and he cannot, by neglecting to do so, turn a partial into a total loss. If this, as a partial loss, was a case out of the policy, it cannot be treated as a total loss, under any circumstances. Although the insured might, whilst the loss by the shipwreck continued, have abandoned, yet he cannot do so, if, at the time the offer is made, the loss has ceased to be total. Cocking v. Fraser [4 Doug. 295] Park. Shipp. 152; Mason v. Skurray [2 Doug. 438] Park. Shipp. 116; Nesbitt v. Lushington, 4 Term R. 783; Schieffelin v. New York Ins. Co., 9 Johns. 21; Wilson v. Royal Exch. Assur. Co., 2 Camp. 623; Anderson v. Royal Exch. Assur. Co., 7 East, 38; Hamilton v. Mendes [2 Burrows, 1198] Park. Shipp. 195; Id. 153, 156.

WASHINGTON, Circuit Justice. We shall in the outset, dismiss from this case all considerations connected with the loss of this cargo, in respect to quantity or value. As to memorandum articles, the insurer agrees to pay for a total loss only—the insured taking upon himself all partial losses, without exception. If the property arrive at the port of delivery, reduced in quantity, or in value, to any amount, the loss cannot be said to be total, in reality; and the insured cannot treat it as total, or demand an indemnity for a partial loss. There is no instance where the insured can demand, as for a total loss, that he might not have declined making an abandonment, and demanded a partial loss. But, if the property insured be included within the memorandum, he cannot, under any circumstances, call upon the insurer for a partial loss; and consequently he cannot elect to turn it into a total loss. These principles I consider to be clearly established, by the cases of Mason v. Skurray, Neilson v. Columbia Ins. Co., Cocking v. Fraser, M'Andrews v. Vaughan [1 Marsh. Ins. 219], Dyson v. Rowcroft, and Maggrath v. Church.

The only question which can possibly arise, between the insurer and insured, in relation to memorandum articles, is, whether the loss was total or not; and this can never happen, where the cargo, or a part of it, has been sent on by the insured, and reaches the original port of its destination. Being there specifically, the insurer has complied with his engagement—every thing like a promise of indemnity against loss or damage to the cargo, being excluded from the policy. If the question turn upon the totality of the loss, unconnected with the subject of loss by deterioration of the cargo in value, or reduction in quantity, we know of no difference between memorandum and other articles. If the loss be total in fact, or is such as the insured is permitted to treat as such, he is entitled to abandon, and to recover as for a total loss, in the case of memorandum articles; but always with this exception, that he is not permitted to turn a partial into a total loss. Keeping this distinction in view, the loss of the voyage, by capture, shipwreck, or otherwise, may be treated as a total loss. This is the doctrine of Dyson v. Rowcroft; in which case, the right to abandon was placed, not upon the ground of deterioration of the cargo, but upon the justifiable necessity which resulted from it, of throwing the cargo overboard. This was in effect the same thing, as if it had, in a storm, been swept from the deck. Such too was the case of Manning v. Newnham. In Cocking v. Fraser, no such necessity existed; and the breaking up of the voyage, was attempted to be justified, by the damaged state of the cargo, which, per se, did not authorize the insured to put an end to the voyage, and thus to turn an average loss, for which the insurer was not liable, into a total loss. Maggrath v. Church also establishes the same doctrine.

Now what is the present case? The brig being thrown on shore, within a mile or two from her port of destination, the agent of the insured employs persons to unlade as much of the cargo as could be saved; and by his exertions, nearly a half of it was landed, dried, and sent forward to the market at Lisbon, and sold by the consignees, at about one-fourth of the price of sound corn, leaving a very inconsiderable sum for the owner, after paying the expenses. Is not this precisely the case of Wilson v. Royal Exch. Assur. Co., and Anderson v. Royal Exch. Assur. Co.? with this difference only, that in the first case, the insured declined sending on the corn, when he might have done so, and consequently he was not permitted to turn a partial into a total loss, by his own neglect; and in the latter case, part of the cargo having been rescued from the wreck, before the offer to abandon was made, the insured could not claim as for a total loss, either on account of the injury which the corn had sustained, or of his own act, in not sending it forward to the port of its destination. In this case, the cargo which was

saved was sent forward, and sold at the port of its destination. But it is contended by the counsel for the plaintiff, that if the loss be such, as that the insured might at one time have treated it as total, it continues to be so, unless at the time when the offer to abandon is made, it is restored to his possession, clear of the effects of the peril, and in a condition to prosecute the voyage. Now this is certainly not the condition of property, which, at the time of the offer to abandon, is in possession of the re-captor, who has a right to retain it, until he has satisfied his salvage. But in this case, the corn was never out of the possession of the agents of the insured, who exercised every act of ownership over it; subject nevertheless to the laws and customs of the country to which it was sent, with which the insurer and insured are supposed to have been acquainted, at the time they entered into this contract, and to which they impliedly agreed to submit. The cargo which was landed, not only continued in the possession and under the direction of the agents of the insured, but it was relieved from the effects of the peril, as between the insurer and insured; and it was not only in a condition to prosecute the voyage, but it did in fact complete it.

Upon the whole, we are clearly of opinion, that this is not such a loss as the defendants have engaged to indemnify against, and that judgment should be given in their favour. Judgment for defendants.

[Subsequently this case was carried by writ of error to the supreme court, where the judgment was affirmed. 1 Wheat. (14 U. S.) 219.]